# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIREMAN'S FUND INSURANCE CO., as subrogee of ALLIANT TECHSYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RECKART LOGISTICS, INC., S&G TRANSPORT SERVICES, INC., and MR. BULT'S, INC., a/k/a MBI, <br><br> Defendants. <br> _____ <br> MR. BULT's, INC., a/k/a MBI, and RECKART LOGISTICS, INC., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> FORE TRANSPORTATION, INC., <br><br> Third-Party Defendant. | Case No. 09 C 5927 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Fireman's Fund Insurance Co. (Fireman's Fund), as subrogee of Alliant Techsystems, Inc. (Alliant), has sued Reckart Logistics, Inc. (Reckart), S&G Transport Services, Inc. (S&G), and Mr. Bult's, Inc. (MBI) under the Interstate Commerce Act, 49 U.S.C. § 14706, and various state-law claims. Reckart and MBI have asserted contribution claims against Fore Transportation, Inc. (Fore) based on its alleged negligence.

In this decision, the Court considers three motions for summary judgment. Fireman's Fund seeks partial summary judgment on its claim against MBI. S&G seeks summary judgment on Fireman's Fund's claim. Fore has moved for summary judgment on MBI's third-party claim. For the reasons stated below, the Court grants the first two motions and postpones decision on the third.

**Background**

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and must draw reasonable inferences in that party's favor. *See, e.g., Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). The following facts are taken from the parties' memoranda of law, their statements of uncontested facts, and exhibits they have submitted in connection with the summary judgment motions.

In late January 2008, Alliant, a manufacturer of ammunition and other products, purchased a quantity of copper and zinc. Alliant then arranged for Olin Brass to fabricate the metals into brass coils at its facility in East Alton, Illinois. To transport the brass coils to its Lewiston, Idaho factory, Alliant hired Reckart as a freight broker – a middleman between buyer and shipper that handles logistics for complicated shipments. Alliant's materials manager informed Olin's shipping clerk that it had engaged Reckart's services and left it to Olin and Reckart to coordinate the transport.

Rick Bittinger, the broker at Reckart who was responsible for handling Alliant's shipment, looked for a carrier to transport the material. In addition to cold-calling several trucking companies, he posted the shipment specifications on several websites on which freelance truck drivers can seek work (including "Internet Truckstop" and

2

"GetLoaded.com"). Bittinger testified that he received a call in response to one of these postings from a man who identified himself only as "Sam" and who claimed to be the owner of "S&G Transportation." Reckart had never worked with S&G before. After Bittinger and Sam agreed on a rate, Bittinger asked to fax Sam a contract and requested a W-9 form, proof of insurance, and a Department of Transportation certificate. Sam provided a fax number to which Bittinger then sent the contract (the fax number turned out to belong to an Office Depot store). Bittinger received from the same fax number a signed contract and the other documents that he had requested, all of which contained information purportedly applying to S&G.

Around the same time, David Bult, a terminal manager for MBI in St. Louis, also received a call from a man identifying himself as "Sam." Bult testified that Sam called in response to an ad Bult had placed on GetLoaded.com about his company's availability for freelance transport. He stated that Sam asked if an MBI truck could move a load of brass coils from East Alton to Chicago for $550 in cash. Bult agreed and arranged for one of MBI's drivers to handle the shipment.

On February 4, 2008, the MBI driver arrived at Olin's East Alton facility and picked up half the amount of brass coils that Alliant had ordered, accompanied by a bill of lading indicating that the brass was bound for Idaho. The driver, John Michaelis, testified that Bult had instructed him to take the shipment to Chicago, notwithstanding the directions on the bills of lading, and then call Sam's cell phone for more specific directions. Michaelis did so and was told to bring the brass to Fore's warehouse. Once there, the shipment was "cross-docked" (moved from one truck to another) onto an unknown vehicle. Bult then had another nearly identical conversation with Sam

3

regarding the other half of Alliant's Brass, after which he dispatched driver Raymond Plymale, who followed the same steps as Michaelis.

Neither load of brass coils has been seen since being cross-docked by Fore. Fireman's Fund, Alliant's insurer, paid Alliant for the cost of raw materials and fabrication and then brought suit as subrogee against Reckart, S&G, and MBI. Fireman's Fund asserted claims against all three defendants for negligence, breach of bailment, and violation of 49 U.S.C. § 14706, commonly known as the "Carmack Amendment" to the Interstate Commerce Act. Reckart and MBI, as third-party plaintiffs, then asserted contribution claims against Fore, alleging negligence. Reckart has since settled with Fireman's Fund and dismissed its claims against Fore, and for all intents and purposes it is no longer a party to this case. The Court previously dismissed all of Fireman's Fund's claims against S&G except those under the Carmack Amendment.

**Discussion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

1.  **Fireman's Fund's Motion for Partial Summary Judgment**

Fireman's Fund has moved for partial summary judgment against MBI on the issue of liability under the Carmack Amendment. The Carmack Amendment states that any "carrier providing transportation or service" shall be "liable . . . for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported . . . ." 49 U.S.C. § 14706(a)(1). It was passed in order to replace the "disparate schemes of carrier liability that existed among the states" with a uniform system that would provide greater predictability for both shippers and carriers. *REI Transport, Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008). The effect of the Carmack Amendment is that "a carrier of an interstate shipment is 'liable to the person entitled to recover under the receipt or bill of lading,' plain and simple." *Id. (quoting* 49 U.S.C. § 14706(a)(1)).

To establish a *prima facie* case under the Carmack Amendment, the shipper must show "(1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages. Upon such a showing, the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Allied Tube & Conduit Corp. v. Southern Pacific Transp. Co.*, 211 F.3d 367, 369-70 (7th Cir. 2000) (citing *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137-38 (1964)). The recognized excepted causes are "acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods." *Id.* at 370 n.2.

Fireman's Fund argues that the undisputed facts establish *prima facie* liability under the Carmack Amendment and none of the exceptions apply. MBI does not dispute that the Carmack Amendment applies to this case.[1] Nor does MBI dispute that Fireman's Fund has met the first and third requirements for *prima facie* liability. As Fireman's Fund asserts, MBI received the brass in good condition, and Alliant (and, therefore, Fireman's Fund) suffered the damages alleged in the complaint – the value of the lost goods as established by the raw-material and fabrication invoices.

MBI's chief argument that it should escape liability is that Fireman's Fund cannot establish the second element of the Carmack test, "arrival in damaged condition," because the brass coils never arrived at their intended destination, damaged or otherwise. The Court disagrees. The plain language of the Carmack Amendment establishes liability "for the actual *loss* or injury to" property. 49 U.S.C. § 14706(a)(1) (emphasis added). Controlling Seventh Circuit authority likewise makes it clear that the Carmack Amendment applies to "causes of action against carriers for damaged *or lost* goods . . . ." *REI Transport*, 519 F.3d at 697 (emphasis added). The Seventh Circuit also upheld carrier liability for disappearing shipments in *Gordon v. United Van Lines, Inc.*, 130 F.3d 282 (7th Cir. 1997) (moving company that failed to deliver goods) and *North American Van Lines, Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452 (7th Cir. 1996) (goods stolen from lot leased by transport company). In both cases, the court

---

[1] MBI is an interstate carrier that received the brass under bills of lading indicating that Idaho was the final destination. The fact that MBI did not, in fact, transport the brass outside of Illinois does not except it from Carmack Amendment liability. *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 75 (2nd Cir. 2001) ("[I]f the final intended destination at the time the shipment begins is in another state, the Carmack Amendment applies throughout the shipment . . . .").

indicated that "the Carmack Amendment governs liability of a common carrier to a shipper for *loss of*, or damage to, an interstate shipment." *North American Van Lines*, 89 F.3d at 455 (emphasis added); *see also Gordon*, 130 F.3d at 284 ("loss of or damage to goods").[2]

MBI further suggests that the suspicious circumstances of the brass coils' disappearance, which is the subject of an ongoing criminal investigation, constitutes a "conspiracy" and "theft" that would qualify as an "act of the public enemy," one of the few situations that can exculpate a shipper from Carmack liability. The precise meaning of the "public enemy" exception has not been established by binding precedent. Several courts have interpreted the phrase, though not specifically in the Carmack context, as referring to an act of war rather than to a theft of the sort alleged to have occurred here. *See, e.g.*, *Anvil Knitwear, Inc. v. Crowley American Transport, Inc.*, No. 00-3243, 2001 WL 856607, at *3 (S.D.N.Y. Jul. 27, 2001) (noting that, for purposes of the Carriage of Goods by Sea Act, "[a]t most, the public enemy exception extends to pirates on the high seas or rebels in insurrection . . . not thieves, rioters and robbers") (citations omitted); *American Cigarette & Cigar Co. v. Garner*, 229 N.C. 173, 175, 47 S.E.2d 854, 856 (1948) ("While armed robbers may be in a sense enemies of society, the loss due to their depredations may not be held in law to come within the definition of 'public enemies' as affecting the liability of a common carrier of goods . . . .") (citations omitted); *David Crystal Inc. v. Ehrlich-Newmark Trucking Co.*, 314 N.Y.S.2d 559, 561

---

[2]*North American Van Lines* and *Gordon* concerned a previous version of the statute, but subsequent changes to the wording have not affected its meaning on this point.

(N.Y. Civ. Ct. 1970) ("Thieves, rioters and robbers, although at war with social order, are not to be classed as 'public enemies' in a legal sense, but are merely depredators for whose acts the carrier remains liable.") (citations omitted). Regardless of whether the public enemy exception might apply, however, MBI could escape liability only if it was not itself negligent. See Allied Tube, 211 F.3d at 370 n.2. MBI has made no attempt to prove this. For this reason, it has failed to show the existence of a genuine issue of fact on the question of its liability.

For these reasons, the Court grants Fireman's Fund's motion for partial summary judgment.

**2.    S&G's Motion for Summary Judgment**

S&G has moved for summary judgment on the ground that there is no evidence that it was involved in the shipment at all. S&G claims that it was a victim of identity theft: in effect, that "Sam" used S&G's name and sent falsified documents to Reckart and that the real S&G had nothing to do with the shipment. In response, Fireman's Fund primarily offers the deposition testimony of and documents received by Bittinger, arguing that at the very least they create an issue of fact regarding S&G's involvement.

In its motion, S&G first asserts that it could not be liable under the Carmack Amendment even if Fireman's Fund's contentions were true, because none of S&G's vehicles are alleged to have been used to transport Alliant's brass (and indeed could not have been, as S&G's car-carrying trailers are incapable of bearing brass coils) and the Carmack Amendment applies only to carriers that are physically involved in a shipment. Fireman's Fund correctly points out, however, that the definition of "transportation" for purposes of Carmack Amendment liability includes "services related

8

to [the movement of passengers or property] including arranging for" a vehicle, facility, or equipment to accomplish such services. 49 U.S.C. § 13102(23). Though a business that acted only as a broker would not qualify under this provision, one that "had been authorized to transport [goods] and accepted and legally bound itself to do so," even if that business later subcontracted the actual shipping to another carrier, could be liable. *Mach Mold Inc. v. Clover Associates, Inc.*, 383 F. Supp. 2d 1015, 1030 (N.D. Ill. 2005). Fireman's Fund argues that, if reasonable inferences were drawn in its favor, a jury could conclude that S&G accepted and then subcontracted the shipment of Alliant's brass in exactly this manner, finding "by process of elimination" that because Reckart never dealt with MBI, "only S&G could have provided MBI's name to Olin Brass." Pl.'s Mem. at 7.

The Court need not decide whether the testimony and documents that Fireman's Fund has offered could create such an inference, however, because they are inadmissible. As related by Bittinger in his deposition testimony, "Sam's" statements that he represented S&G and accepted the shipment on S&G's behalf are clear examples of statements not "made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and are therefore inadmissible hearsay. *See* Fed. R. Evid. 802; *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.") (citations omitted).

Bittinger admitted that he did not check references or confirm with any outside source the information he received regarding S&G. Bittinger Dep. 84:1-91:21, 128:2-22. The only indication that his conversations were with a representative of S&G, and

9

that the faxed documents came from the company, was the phone call with Sam.
Though Bittinger suggested that his assistant, Stephen Duffield, may have sought
outside information regarding S&G, Fireman's Fund provides no evidence that Duffield
actually did so, nor is it likely that such information would be admissible even if he had.
In sum, Bittinger's deposition testimony cannot provide a sufficient foundation for the
W-9, Department of Transportation certificate, or proof of insurance supposedly faxed
by Sam on S&G's behalf. The documents are therefore inadmissible because
Fireman's Fund has failed to authenticate them. *See* Fed. R. Evid. 901; *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (noting that evidence considered at the summary judgment stage "need not be admissible in form [but] must be admissible in content") (citations omitted); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985).

The only other evidence Fireman's Fund submits in support of S&G's involvement is the deposition of Dave Romesburg, Alliant's materials manager:

> Q: Do you recall the name of the trucking company that was utilized to transport these materials?
>
> A: Not specifically. S&G or somebody. I would have to look at the documents again.

Romesburg Dep. 24:11-14. Because Romesburg has provided no foundation for this knowledge, the Court cannot appropriately consider it. And even if it could, this testimony would be insufficient to create a genuine issue of material fact on the issue of S&G's involvement.

Because Fireman's Fund has not provided any admissible evidence from which a reasonable finder of fact could conclude that S&G should be held liable under the

Carmack Amendment, the Court grants S&G's motion for summary judgment.

3.   **Fore's Motion for Summary Judgment**

MBI has brought a third-party complaint for contribution against Fore, alleging that Fore was negligent in conducting the cross-docking of Alliant's brass coils, that any damages suffered by Fireman's Fund were the direct result of such negligence, and that MBI is therefore entitled to contribution from Fore in the event that MBI itself is held liable. Fore now seeks summary judgment, arguing that it cannot be liable for contribution because it did not owe a duty either to MBI or to Alliant. MBI's response does not address the argument regarding the existence of a duty to MBI, asserting only that Fore owed a duty to Alliant.

In researching these points, the Court has identified a third argument, not raised by either side, that a contribution claim like MBI's may be foreclosed by the Carmack Amendment. *See, e.g.*, *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 785 (7th Cir. 2008) (quoting *North American Van Lines*, 89 F.3d at 458) ("[W]e previously have held that the [Illinois Contribution Act] did not apply to a party sued under the Carmack Amendment because the federal statute 'preempt[ed] the field formerly occupied by common law theories of liability.'"). In addition to barring state law contribution claims, the Carmack Amendment may also bar them as a matter of federal common law. *See, e.g., Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) (citations omitted) ("Courts have become reluctant to recognize a right of contribution as a matter either of federal common law or of statute."); *Fireman's Fund Ins. Co. v. Werner Enters. Inc.*, No. 03-3228, 2004 WL 406981, at *6 (N.D. Ill. Feb. 6, 2004)

(finding that under the Carmack Amendment "a contribution action based on federal common law seeking joint tort liability should [not] be treated differently from one brought under state law"). Because the parties have not addressed this point, the Court directs them to submit supplemental briefing on this matter and declines to rule on Fore's motion until it has reviewed their arguments.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment against defendant Mr. Bult's, Inc. on the issue of liability [docket no. 103] and defendant S&G Transport Services, Inc.'s motion for summary judgment against Plaintiff [docket no. 108]. The Court directs MBI and Fore to submit supplemental memoranda of law as indicated above on or before September 27, 2011. The case is set for ruling on Fore's motion for summary judgment, and for a status hearing, on October 11, 2011 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 13, 2011